VIOLA BAILEY *v.* JAMES W. BARTLETT *et al., etc.*

(No. 7059)

Submitted March 15, 1932. Decided March 22, 1932.

W. *Bruce Talbott, Guy H. Burnside* and *Lawrence W. Lynch,* for plaintiffs in error.
*Wyckoff & Wyckoff,* for defendants in error.

WOODS, JUDGE:

Viola Bailey obtained a judgment for $12,500.00 against James W. Bartlett, William H. Bartlett and Ralph W. Bartlett, doing business as Bartlett Brothers Bus Company, for personal injuries sustained while riding on one of defendant's busses on a scheduled trip between Clarksburg and Grafton, on January 18, 1928, from which judgment the defendants prosecute error. This is a companion case to *Bennett* v. *Bartlett et al.,* 110 W. Va. 478, 158 S. E. 712. Plaintiff having been injured in the same accident, the state of facts by Judge Hatcher in that case will render a full statement unnecessary here.

28

The record shows conclusively that plaintiff's injuries were severe and permanent. However, the parties take opposite views regarding the degree of care, if any, owed by the defendants. The declaration is based on the theory that the defendant company was a common carrier and that plaintiff was a passenger for hire. Defendants, in developing a defense of limited liability, sought to introduce an alleged "free pass", containing the following stipulation: "The person accepting and using this pass thereby assumes all risk of accident and injury to person and damage to, or loss of, property." It was issued for the year 1927, but had been extended, according to defendants, pending the issuance of another for the year 1928. All evidence pertaining to this pass was stricken from the record. The status of such pass is admittedly the crux of this litigation.

The legislature in 1913 hedged all common carries about with certain stautory limitations. Code 1923, chapter 15-0. Control was given to a public service commission to regulate rates and to change or prohibit any practice, device or method of service in order to prevent undue discrimination, etc. The sixth section of that chapter prohibits common carriers from directly or indirectly demanding, collecting or receiving from any person or corporation à greater or less compensation for any service rendered or to be rendered, than it charges, demands, collects or receives from any other person, firm or corporation, for doing a like service, under the same or substantially similar circumstances. Section 7 makes it unlawful for any common carrier to give any undue or unreasonable preference or advantage to any particular person, or service, in any respect whatsoever. Section 17 makes every officer, employee of any common carrier, as well as every patron, passenger, etc., who shall violate any of the provisions of the act, guilty of a misdemeanor, and punishable by fine and imprisonment, or both, in the discretion of the court. Section 20 designates those to whom a common carrier may furnish free transportation, without violating the act. Needless to say, these sections follow the Act of Congress of June 29, 1906, commonly called the Hepburn Act (34 Stat. at L. 584, 585, Chap. 3591, sec. 1) very considerately, wherein both

federal and state acts make it an offense on the part of both carrier and passenger, where the carrier extends free transportation to one not within the statutory classification, and the latter makes use of the same. *Cominsky* v. *N. & W. Ry. Co.*, 79 W. Va. 148, 90 S. E. 385.

Prior to the Hepburn Act the Supreme Court of the United States held that a passenger who accepts a free pass may exempt a carrier from responsibility for negligence and that no public policy would be violated thereby. *Northern Pacific Railway Co.* v. *Adams* (Wash. 1904), 192 U. S. 440. The foregoing case, and that of *Boering* v. *Chesapeake Beach Railroad Co.*, (Dist. Col. 1904) 193 U. S. 442, were considered and applied as giving validity to stipulations of passes issued under the Hepburn Act in *Charleston Ry. Co.* v. *Thompson*, 234 U. S. 576, decided in 1914. In that case, Mrs. Thompson, being the wife of an employee of the railroad company, came within the statutory classification. The carrier, not being obliged to issue the pass, could lawfully, according to the decision, contract regarding its liability. In other words, by virtue of the federal act, passes were limited to those named in the statutory classification, and as pointed out by Justice Holmes, such passes must be construed as being ''free'' in order to harmonize with the second section of the act providing against discrimination. To same effect: *Kansas City So. Ry. Co.* v. *Van Zant*, (1923) 260 U. S. 459.

The defendant bus company was engaged in intrastate as distinguished from interstate carriage. Plaintiff admittedly does not come within the state statutory classification of persons to whom free transportation may be furnished. Not being permitted to use such transportation, it naturally follows, according to the federal decisions, that she cannot contract away her right to exact that degree of care owed to a passenger for hire. The object of our statute is to prevent the giving of passes, except to certain individuals. The legislature recognized that it was not for the best interests of the public to allow carriers to issue passes promiscuously. We think it quite clear that the pass in question being issued in the face of the statutory inhibitions against discrimination, and the consequent penalty attached thereto, render it void

and of no effect. If permitted to stand as a binding contract, the law seeking to regulate free transportation could be violated with impunity.

But assuming, as contended for by the carrier, that the plaintiff was on the bus by virtue of the pass and not as a passenger ready and willing to pay, can it insist that it is liable for only that degree of care exacted of a private operator? The law seems to be well established that the same degree of care that is owed to a passenger for hire is owed to one who is carried gratuitously, in the absence of any condition or stipulation on the part of the latter as to assumption of risk. 4 R. C. L., Subject "Carriers", section ·475; *Kansas City Co. Ry.* v. *Van Zant*, supra. It occurs to us that the plaintiff was on the bus by consent of the carrier, and not as a trespasser. She was, according to all principles of right and justice, entitled to the same degree of care owed to a passenger for hire. *Southern Pac. Co.* v. *Schuyler*, (1912) 227 U. S. 601, affirming 37 Utah 581. The following decisions, involving state laws relating to gratuitous carriage, are in accord with the case just cited. *Buffalo, P. & W. R. Co.,* v. *O'Hara*, 3 Pennyp. 190; *Bradburn* v. *Whatcom County R. & Light Co.*, 45 Wash. 582; *Gabbert* v. *Hackett*, 135 Wis. 86; *John* v. *Northern P. R. Co.*, 42 Mont. 18; *McNeill* v. *Durham & C. R. Co.*, 135 N. C. 682. An adverse holding in view of our legislative enactment would be contrary to the public policy of the state. The duty owing by the carrier is a public one; it does not grow out of private contract with each individual carrier but is imposed for the welfare of the public. *Grand Trunk Ry.* v. *Stevens*, 95 U. S. 655. Our legislature has deemed it wise to hold the carrier to its common law duty in such cases.

We are of opinion that the trial court properly excluded the evidence relating to the pass. Its issuance and use being a violation of the statute, defendant clearly should not be permitted to rely thereon. *Raleigh County Bank* v. *Bank of Wyoming*, 100 W. Va. 342, 130 S. E. 476; *Lomond Co.* v. *McNabb*, 109 W. Va. 142, 153 S. E. 905. To permit defendants to do so would be to allow them to profit by their own wrong. That its issuance was an evil to be righted is shown

by the fact that the legislature imposed a greater penalty for the second offense.

In view of our holding, the plaintiff stood in the position of a passenger for hire at the time of the accident, and the defendants owed to her every duty that they owed to such passenger. The defendants, however, re-assert objections to the instruction given. These instructions were similar in form and matter to those given in the companion case, where the plaintiff was a passenger for hire. We observe no error upon a re-examination and reconsideration of them. The defendants stressed the point that in view of the fact that the declaration did not set out the claim for hospital expenses, nurse hire, etc., plaintiff should have limited her recovery therefor in an instruction. However, an instruction was given that by reason of the failure to set out these facts in the declaration, the jury should not regard the costs of such administration as a part of the damages. As these instructions, by statute, are regarded as the instructions of the court, without regard to the person offering them, we do not see room for defendants' complaint. The evidence discloses no attempt on the part of the plaintiff to recover for amounts incurred in hospitalization or nurse hire. Such reference to the time spent in hospital and the time that the plaintiff remained under the nurse's care was proper for the purpose of showing merely the extent of her injury and suffering therefrom. The complaint that the defendant was not permitted to give in evidence the schedule of time and that the jury were not instructed to regard the same as combatting the claim of negligence seems to be without merit as the record shows that such evidence did get before the jury, and to permit an instruction relating to it to be given to the jury would be to violate the principle of instructing particularly on one fact to the exclusion of others introduced in evidence.

Perceiving no error, we affirm the judgment.

*Affirmed.*